UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

TAJE MONBO and DEAFUEH MONBO,

                              Plaintiffs,

              -against-

LOTFY NATHAN, RED GAP FILM GROUP, LLC,
VERTICAL ENTERTAINMENT, LLC, OSCILLOSCOPE
PICTURES, INC., OSCILLOSCOPE, INC., DANIEL
BERGER, THOMAS SLADEK, OVERBROOK
ENTERTAINMENT, INC., OVERBROOK
ENTERTAINMENT, LLC, WILL SMITH, SONY
PICTURES ENTERTAINMENT, INC., MISSION FILM,
INC., and ERIC BLAIR

                             Defendants.

:
: Case No.: 18-CV-05930-
: MKB
:
:
: **ECF Case**
:
:
: **MEMORANDUM OF LAW**
: **IN SUPPORT OF THE SPE**
: **DEFENDANTS' MOTION**
: **TO DISMISS PLAINTIFFS'**
: **FIRST AMENDED**
: **COMPLAINT PURSUANT**
: **TO RULE 12 OF THE**
: **FEDERAL RULES OF**
: **CIVIL PROCEDURE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST
      THE SPE DEFENDANTS ..................................................................................... 3

      A.    FOR THEIR COPYRIGHT CLAIMS, PLAINTIFFS ALLEGE ONLY
            THREE SIMILARITIES BETWEEN PLAINTIFFS' FILMS AND THE
            SPE DEFENDANTS' FILM, NONE OF WHICH IS EVEN REMOTELY
            PROTECTIBLE AND TWO OF WHICH ARE NOT EVEN SIMILAR. ............. 3

            1.    Standards for Copyright Infringement. ....................................... 3

            2.    The Three Similarities Alleged With Any Specificity by Plaintiffs
                  do not Constitute Copyright Infringement. ................................. 5

      B.    PLAINTIFFS HAVE NO CLAIM FOR TRADEMARK INFRINGEMENT
            AGAINST THE SPE DEFENDANTS ................................................................ 9

            1.    Standard for Stating Cause of Action for Trademark Infringement. .......... 9

            2.    None of the Four Instances Plaintiffs Claim Constitute Trademark
                  Infringement are a Valid Basis for Such a Claim. .................................. 11

      C.    CASTING ACTUAL MOTORCYCLE STUNT DRIVERS DOES NOT
            CONSTITUTE TRADEMARK DILUTION. ...................................................... 14

      D.    PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT IS
            PREEMPTED BY FEDERAL LAW AND FAILS TO STATE A CLAIM. ....... 14

      E.    THE SPE DEFENDANTS JOIN IN THE MOTION AND BRIEFING
            FILED BY THE OTHER DEFENDANTS AS APPLICABLE ........................... 15

      F.    LEAVE TO AMEND SHOULD BE DENIED. .................................................. 15

II.   ALTERNATIVELY, PLAINTIFFS' CLAIM THAT A MOTION PICTURE
      THAT HAS NOT YET BEEN RELEASED WILL BE INFRINGING IS NOT
      RIPE. .................................................................................................................... 15

III.  ADDITIONALLY, THE COURT LACKS PERSONAL JURISDICTION OVER
      THE OVERBROOK DEFENDANTS AND WILL SMITH ............................................ 17

A.    RELEVANT FACTUAL BACKGROUND ........................................................... 18

    1.    Smith ......................................................................................................... 18

    2.    Overbrook Defendants ............................................................................... 19

B.    APPLICABLE LAW ........................................................................................... 20

    1.    General Personal Jurisdiction .................................................................... 20

    2.    Specific Personal Jurisdiction ................................................................... 22

C.    ARGUMENT ....................................................................................................... 23

    1.    The Court Lacks General Personal Jurisdiction Over The Overbook
        Defendants and Smith. ............................................................................... 23

    2.    The Court Lacks Specific Jurisdiction Over The Overbrook
        Defendants and Smith. ............................................................................... 24

    3.    Exercise of Personal Jurisdiction Over the Overbrook Defendants
        and Smith Would Violate Due Process and Does Not Comport With
        Traditional Understandings of Fair Play and Substantial Justice. ............ 24

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ..................................22

*Allen vs Scholastic Inc.*,
739 F. Supp. 2d 642 (S.D.N.Y. 2011).......................................................................................7

*Arden v. Columbia Pictures Indus., Inc.*,
908 F. Supp. 1248 (S.D.N.Y. 1995)..........................................................................................7

*Arica Inst., Inc. v. Palmer*,
970 F.2d 1067 (2d Cir. 1992)....................................................................................................5

*Asahi Metal Indus. Co. v. Superior Court of California*,
480 U.S. 102 (1987)................................................................................................................20

*Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*,
565 F. Supp. 2d 505 (S.D.N.Y. 2008)......................................................................................14

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) .................................................................................................15

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014).........................................................................................15, 16, 17

*Authors Guild, Inc. v. HathiTrust*,
902 F. Supp. 2d 445 (S.D.N.Y. 2012)......................................................................................16

*Azurite Corp. v. Amster & Co.*,
844 F. Supp. 929 (S.D.N.Y. 1994), *aff'd*, 52 F.3d 15 (2d Cir. 1995)......................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................12

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997)......................................................................................................23

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) ..................................................................................................6

*Best Van Lines v. Walker*,
490 F.3d 239 (2d Cir. 2007)...............................................................................................23, 24

*Bowman v. Winder*,
No. 14 CIV. 3428 AT, 2015 WL 1639255 (S.D.N.Y. Mar. 25, 2015).....................................23

*Burch v. Pioneer Credit Recovery*,
551 F.3d 122 (2d Cir. 2008)....................................................................................................12

*Burrows Paper Corp. v. R.G. Eng'g, Inc.*,
363 F. Supp. 2d 379 (N.D.N.Y. 2005).....................................................................................22

*Carell v. Shubert Org., Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000)..........................................................................21, 22, 24

*Center for Discovery Inc. v. DP*,
16-cv-3936, 2018 WL 1583971 (E.D.N.Y. Mar. 31, 2018) ................................................8, 17

*Daimler AG v Bauman*,
571 U.S. 117 (2014)..........................................................................................................21, 24

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001)......................................................................................................20

*Gaines v. Nisberg*,
843 F. Supp. 851 (W.D.N.Y. 1994).........................................................................................25

*Hallford v. Fox Entertainment Group, Inc.*,
2013 WL 541370 (S.D.N.Y. 2013)............................................................................................8

*Hoehling v. Universal City Studios, Inc.*,
618 F.2d 972 (2d Cir. 1980)......................................................................................................4

*Hogan v. DC Comics*,
48 F. Supp. 2d 298 (S.D.N.Y. 1999)..........................................................................................7

*Hudson v. Universal Studios, Inc., No. 04 Civ. 6997*,
2008 WL 4701488 (S.D.N.Y. Oct. 28, 2008)............................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013).....................................................................................................21

*Jones v. CBS, Inc.*,
733 F. Supp. 748 (S.D.N.Y. 1990) ............................................................................................4

*Kelly v. Univ. Press of Mississippi*,
2016 WL 4445986 (C.D. Cal. Aug. 16, 2016).....................................................................16, 17

*King Cnty. v. IKB Deutsche Industriebank AG*,
769 F. Supp. 2d 309 (S.D.N.Y. 2011).....................................................................................20

*Licci v. Lebanese Canadian Bank*,
20 N.Y.3d 327 (2012) .......................................................................................................23, 25

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*,
15 N.Y.2d 443 (1965) ...............................................................................................................25

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012)..................................................................................10, 11

*M. Shanken Commc'ns, Inc. v. Variant Events, LLC*,
No. 10-CV-4747, 2010 WL 4159476 (S.D.N.Y. Oct 7, 2010)..................................................22

*Magdalena v Lins*,
123 A.D.3d 600 (N.Y. App. Div. 2014) ...................................................................................21

*Marie v. Altshuler*,
817 N.Y.S.2d 261 (2006)..........................................................................................................23

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)........................................................................................................21

*Mid S. Bldg. Supply of Maryland, Inc. v. Guardian Door & Window, Inc.*,
156 Md. App. 445 (2004) ............................................................................................................9

*Miller v. Walters*,
46 Misc. 3d 417, 997 N.Y.S. 2d. 237 (Sup. Ct. N.Y. Cty. 2014) .............................................14

*National Business Development Services, Inc. v. American Credit Education and Consulting, Inc.*,
299 F. App'x. 509 (6th Cir. 2008) ..............................................................................................8

*Norex Petroleum Ltd. v. Blavatnik*,
22 N.Y.S.3d 138 (N.Y. Sup.), *judgment entered sub nom. Norex Petroleum Ltd. v. Blavatnik, et al.* (N.Y. Sup. Ct. 2015)............................................................................21

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
602 F.3d 57 (2d Cir. 2010).........................................................................................................4

*Reich v Lopez*,
858 F.3d 55 (2d Cir. 2017).......................................................................................................21

*Reyher v. Children's Television Workshop*,
533 F.2d 87 (2d Cir. 1976).....................................................................................................4, 5

*Savin Corp. v. Savin Grp.*,
391 F.3d 439 (2d Cir. 2004)............................................................................................9, 10, 14

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010) ........................................................................................7

*Starobin v. King*,
  137 F. Supp. 2d 93 (N.D.N.Y. 2001) ..........................................................................................5

*Sterling Acceptance Corp. v. Tommark, Inc.*,
  227 F. Supp. 2d 454 (D. Md. 2002), *aff'd*, 91 F. App'x 880 (4th Cir. 2004) ......................9, 10

*Trisvan v. Heyman, et al.*,
  16-CV-84 (MKB), Dkt. No. 23 (E.D.N.Y. 2017) .....................................................................20

*Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ....................................................................................................10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................................................25

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) .....................................................................................................5, 7

*Wickers Sportswear, Inc. v. Gentry Mills, Inc.*,
  411 F. Supp. 2d 202 (E.D.N.Y. 2006) ......................................................................................22

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ......................................................................................................4, 5

*Wnet v. Aereo, Inc.*,
  871 F. Supp. 2d 281 (S.D.N.Y. 2012) .......................................................................................14

**Statutes**

15 U.S.C. §§ 1051 et seq. .................................................................................................................9, 10

28 U.S.C. § 1400 ...................................................................................................................................25

Md. Code, Bus. Reg. § 1-414 et seq. ......................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(3) ........................................................................................................................25

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................................1

N.Y. C.P.L.R. 301 ...........................................................................................................................21, 25

N.Y. C.P.L.R. 302 ...........................................................................................................................24, 25

N.Y. C.P.L.R. 302(a)(1) .......................................................................................................................23

N.Y. C.P.L.R. 302(a)(2)....................................................................................................................23

## INTRODUCTION

Defendants Overbrook Entertainment, Inc. and Overbrook Entertainment, LLC,[1] Will Smith ("Smith"), and Sony Pictures Entertainment Inc. (collectively, the "SPE Defendants") hereby submit this memorandum of law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the first amended complaint ("FAC') filed by Plaintiffs Taje Monbo and Deafueh Monbo ("Plaintiffs") for failure to state a claim. Alternatively, the FAC should be dismissed pursuant to rule 12(b)(1) and/or 12(b)(6) because the claims are not ripe, and should be dismissed pursuant to rules 12(b)(2) and 12(b)(3) against the Overbrook Defendants and Smith based on lack of personal jurisdiction and/or improper venue.

Plaintiffs claim that a feature film, which is being made by the SPE Defendants, violates copyright and other rights in films owned by Plaintiffs. However, in their FAC, Plaintiffs can allege only three supposed similarities between their films and the SPE Defendants' film, and those alleged similarities do not at all support a claim for copyright infringement. Plaintiffs also claim trademark infringement against the SPE Defendants, but do not allege any actions that constitute trademark infringement. Further, the SPE Defendants' film is not yet finished, has not been released, nor does it have a title. Thus, it is premature for Plaintiffs to claim any violation of their rights, because they do not know what the film contains. Additionally, the Overbrook Defendants and Smith are domiciled in California and are not subject to personal jurisdiction in this action. Plaintiffs' complaint should be dismissed.

## STATEMENT OF FACTS

Plaintiffs allege they own two copyrighted documentary films (collectively entitled the "12 O'Clock Boyz" Films) made in 2001 and 2003 about a group of urban dirt-bike riders in Baltimore,

---

[1] Overbrook Entertainment, Inc. and Overbrook Entertainment, LLC shall be referred to collectively as the "Overbrook Defendants."

Maryland. FAC ¶¶ 1, 47, 48. Plaintiffs also claim to hold certain trademark rights in the phrase "12 O'Clock Boyz" (the "12 O'Clock Boyz Mark"). *Id.* at ¶ ¶ 56, 58.

Plaintiffs allege that in 2013, certain defendants, but not any of the SPE Defendants, made a documentary entitled "12 O'Clock Boys" (the "2013 Documentary") about dirt-bike riders in Baltimore, *id.* at ¶ 2, and that the 2013 Documentary used clips, characters, scenes, phrases and other elements from the Plaintiffs' Films without consent and in violation of Plaintiffs' copyrights and trademarks, *id.* at ¶ 3.

The FAC does not allege that the SPE Defendants participated in the production or distribution of the 2013 Documentary. Despite this, Plaintiffs have joined the SPE Defendants, apparently because the SPE Defendants acquired the right to make a narrative (non-documentary) film (the "the SPE Defendants' Film") based on the 2013 Documentary and are in the process of making the SPE Defendants' Film. *Id. at* ¶¶ 7-9.

Plaintiffs claim that the SPE Defendants' Film, which has not been released and they have never seen, infringes the copyright in Plaintiffs' Films. However, the Plaintiffs allege only three similarities between the SPE Defendants' Film and Plaintiffs' Films, and none of those constitute a substantial similarity of protectible elements required to state a claim for copyright infringement.

Plaintiffs also claim that the SPE Defendants infringed Plaintiffs' trademarks, even though they do not (and cannot) allege that the SPE Defendants' Film will be entitled "12 O'Clock Boys." Instead, Plaintiffs try to create a trademark claim based on some online references which do not constitute trademark infringement and could not possibly cause any consumer confusion about the origin of the SPE Defendants' Film.

It is not surprising that Plaintiffs have not been able to allege any claim against the SPE Defendants, because the SPE Defendants' Film has not been released yet. Thus, in addition to the

fact that Plaintiffs have not stated a claim against the SPE Defendants, their claims are not ripe and should be dismissed on that basis as well.

Additionally, neither the Overbrook Defendants nor Smith are domiciled in New York, none regularly transacts business or owns property in New York, none has ever met Plaintiffs, and the subject matter of the claims against them does not arise from their activities in New York. *Id.* at ¶¶ 27-29; declarations of Smith and the Overbrook Defendants. Plaintiffs allege merely that the SPE Defendants' Film has been mentioned on the Internet, *id.* at ¶ 17, which is insufficient to establish personal jurisdiction.[2]

## ARGUMENT

### I. THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE SPE DEFENDANTS

#### A. FOR THEIR COPYRIGHT CLAIMS, PLAINTIFFS ALLEGE ONLY THREE SIMILARITIES BETWEEN PLAINTIFFS' FILMS AND THE SPE DEFENDANTS' FILM, NONE OF WHICH IS EVEN REMOTELY PROTECTIBLE AND TWO OF WHICH ARE NOT EVEN SIMILAR.

##### 1. Standards for Copyright Infringement.

Plaintiffs claim that the SPE Defendants' Film – which has not been released and they have never seen – is substantially similar to Plaintiffs' Films and thus they have a claim for copyright infringement. The FAC, however, identifies only three purported similarities – young riders who want to join a motorcycle club, use of skilled motorcycle stunt riders, and a setting in Baltimore. None of these are protectable similarities under copyright law, and thus the First, Second, Third and Sixteenth Causes of Action must be dismissed.

In copyright infringement cases, it is appropriate for the Court at the motion to dismiss stage to determine if there is sufficient similarity between the plaintiff's work and the alleged

---

[2] Defendant Sony Pictures Entertainment does not challenge personal jurisdiction over it.

infringing work to sustain a claim for copyright infringement. *Peter F. Gaito Architecture, LLC v. Simone Development Corp*., 602 F.3d 57, 63-64 (2d Cir. 2010) ("it is entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.' . . . These same principles hold true when a defendant raises the question of substantial similarity at the pleadings stage on a motion to dismiss.").

In determining whether two works are substantially similar, courts in this Circuit "must take care to inquire only whether 'the protectible elements, standing alone, are substantially similar.'" *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996) (quoting *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)). In performing its gatekeeper function, there are several fundamental principles which the Court must apply.

First, "[i]t is a principle fundamental to copyright law that a copyright does not protect an idea, but only the expression of an idea." *Williams*, 84 F.3d at 587 (internal quotations and citations omitted). "It has long been recognized that all fictional plots, when abstracted to a sufficient level of generalization, can be described as similar to other plots." *Jones v. CBS, Inc.*, 733 F. Supp. 748, 753 (S.D.N.Y. 1990).

Second, the Second Circuit has repeatedly held that stock scenes and stock themes, often termed scenes à faire, cannot form the basis of a copyright claim. These are defined as "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic," *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980), or as "thematic concepts . . . which necessarily must follow from certain plot situations." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976). In a police story set in

4

the Bronx, for example, "[e]lements such as drunks, prostitutes, vermin and derelict cars" as well as "[f]oot chases[,] . . . the morale problems of policemen . . . [and] the Irish cop" were unprotectible scenes à faire or stock elements. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986).[3]

In recognition of the necessarily close parallels in abstract ideas and literary conventions in many works of creative fiction, the standard for establishing substantial similarity is a demanding one. A copyright plaintiff must demonstrate that the defendant author has "appropriated the fundamental essence or structure of plaintiff's work." *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1073 (2d Cir. 1992) (*quoting* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.03[A][1] at 13-27). Moreover, "the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization." *Reyher*, 533 F.2d at 91. The works must share similarities in "such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting." *Williams*, 84 F.3d at 588.

### 2. The Three Similarities Alleged With Any Specificity by Plaintiffs do not Constitute Copyright Infringement.

In this case, Plaintiffs allege only three similarities between Plaintiffs' Films and the SPE Defendants' Film, and none of these supports a claim for copyright infringement. Indeed, two of the alleged similarities are not similarities at all, and the third alleged similarity is the location of Baltimore, Maryland, which is not a protectible element and not a valid basis for a copyright claim.

---

[3] Also, mere lists of purported random "similarities" isolated from the context in which they appear, like the one that Plaintiff has provided in paragraph 163 of the Complaint, are "inherently subjective and unreliable," particularly where "the list emphasizes random similarities scattered throughout the works." *Williams*, 84 F.3d at 590; *see also Starobin v. King*, 137 F. Supp. 2d 93 (N.D.N.Y. 2001). This is particularly true where, as here, the similarities are not copyrightable, and the only similarities alleged in the FAC are contained in the short list of alleged similarities in paragraph 163.

The similarities alleged by Plaintiffs are contained in paragraph 163. The first alleged similarity is as follows:

| The SPE Defendants' Film | Plaintiffs' Films |
|---|---|
| "Mouse, a young boy who wants to join the Midnight Clique. Mouse also aspires to be a veterinarian. Note: 'Midnight' is '12 O'Clock'." | "[i]n Plaintiffs' 12 O'Clock Boyz, elite young riders (including Pug) showcase their riding talents and discuss what it takes for other young men to become a '12 O'clock Boy'." |

These two supposed similarities are not even similar, and do not describe protectible elements. The alleged element in the SPE Defendants' Film is a boy named Mouse, who wants to join a motorcycle group and be a veterinarian, while the element in the Plaintiffs' Films is a boy named Pug and other riders showing off their talents and discussing what it takes to be a member of a motorcycle group with a different name. A boy wanting to become a member of a motorcycle group is not substantially similar to young motorcycle riders showing off and talking about what it takes to become members of a motorcycle group – they are very different concepts. [4]

Further, both of these elements are mere ideas. Anyone is free to make a movie or any other work about a boy who aspires to be the member of a motorcycle group or any other type of group – that idea is not protectable. Such "[g]eneral plot ideas are not protected by copyright law; they remain forever common property of artistic mankind." *Berkic v. Crichton*, 761 F.2d 1289,

---

[4] "The bar for substantial similarity in a character is set quite high." *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010). Characters that are "essentially undeveloped stereotypes" or "constitute a general prototype" are not protectable. *Hudson v. Universal Studios, Inc., No. 04 Civ. 6997, 2008 WL 4701488 at *6 (S.D.N.Y. Oct. 28, 2008* (no copyright ownership in "idea of a horny, sex-seeking, over-the-top, gay character," "tough prison guard" or "young, incarcerated African-American male"); *Allen vs Scholastic Inc.*, 739 F. Supp. 2d 642, 659-60 (S.D.N.Y. 2011) ("famous male wizards, initiated late into wizarding (in pre/early adolescence), who receive formal education in wizarding and are chosen to compete in year-long wizard competitions" were general prototypes); *Sheldon*, 748 F. Supp. 2d at 208 (although both works involved a "male protagonist, confined to his home, who spies on neighbors to stave off boredom and, in so doing, discovers that one of his neighbors is a murderer," that alone did not demonstrate substantial similarity); *Arden v. Columbia Pictures Indus.*, Inc., 908 F. Supp. 1248, 1261 (S.D.N.Y. 1995) (even though protagonists of the two disputed works were both self-centered bachelors in their mid-thirties who pursued love interests and became trapped in a repeating day, these similarities "exist[ed] only at a level of abstractions too basic to permit any inference that defendants wrongfully appropriated any 'expression' of plaintiff's ideas").

1293 (9th Cir. 1985); *Walker*, 784 F.2d at 48-49 (substantial similarity must be based on "more than mere generalized idea[s] or themes").

In addition, both alleged similarities are not original and/or are classic scenes a faire. The idea of a young person aspiring to join a group he finds exciting, prestigious or the like is a classic plot, used in works as varied as *The Three Musketeers* and *Rudy*. And any film about motorcycle stunt riders is going to show riders doing such stunts and discussing what it takes to be a motorcycle stunt rider. The first supposed similarity is not a basis for a copyright claim.

For the second claimed similarity, Plaintiffs allege:

| The SPE Defendants' Film | Plaintiffs' Films |
| --- | --- |
| "Wildout Wheelie Boyz, Raise It Up and other riders from around the country were casted as the Midnight Clique/12 O'clock Boys," | "Taje casted an exclusive group of highly skilled riders to play the 12 O'clock Boyz." |

Plaintiffs do not claim that the SPE Defendants' Film uses the same cast as in Plaintiffs' Films – they just claim that both films use highly skilled motorcycle riders. The use of skilled motorcycle riders is not a protectible expression of treatment, scenes, events etc. Anyone, including the SPE Defendants, is totally free to make a motorcycle movie using skilled riders, even the riders that Plaintiffs used in their films. *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 312 (S.D.N.Y. 1999) (even though protagonists in both works had the same name, both were half-human and half-vampire, appeared to be in their early twenties and shared other "characteristics common to a great many 'Generation X' post-adolescents," these were all unprotectible elements).

Further, using skilled motorcycle stunt riders in a film about motorcycle stunt riders is as about an obvious scene a faire as possible. It would be almost unthinkable that a movie about motorcycle stunt riders would not feature such performers. Plaintiffs' second alleged similarity does not give rise to a viable claim.

7

Plaintiffs' third alleged similarity can quickly be disposed of – that similarity is that both films take place in Baltimore, Maryland. Many films have been set in Baltimore. A location is not a protectible element under copyright. *Hallford v. Fox Entertainment Group, Inc.*, 2013 WL 541370 at \*7 (S.D.N.Y. 2013) ("Both works feature scenes in New York City. But the setting of New York City is not a protectible element of a copyrighted work.").

Thus, the only three similarities that are alleged in any detail are not true similarities and are not protectible in any event. The only other allegation of similarity in the complaint is a boilerplate allegation in paragraph 140 of the FAC that "[d]efendants Overbrook Entertainment, Sony and Will Smith incorporated numerous elements of Plaintiffs' 12 O'Clock Boyz Copyrighted Works that appeared in the infringing 12 O'Clock Boys (2013) into the infringing 12 O'Clock Boys Feature Adaption, including but not limited to the characters, concepts, feel, and mood."

Such a barebones allegation does not meet the requirements of Rule 8 as laid out in *Ashcroft*, *Burch* and a plethora of other cases. *See also National Business Development Services, Inc. v. American Credit Education and Consulting, Inc.*, 299 F. App'x. 509, 512 (6th Cir. 2008) ("Plaintiff's complaint amounts to no more than a speculative claim that Defendants may have produced some work that in some way infringed upon Plaintiff's works. This pleading is insufficient, and Plaintiff's action must be dismissed."); *Center for Discovery Inc. v. DP*, 16-cv-3936, 2018 WL 1583971, \*5, \*16 (E.D.N.Y. Mar. 31, 2018) (Judge Brodie) (failure to state a claim and ripeness). A mere allegation stating the legal conclusion that a work that Plaintiffs have never seen contains infringing material is simply the type of "formulaic recitation of the elements of a cause of action" held insufficient by *Ashcroft* and numerous other cases.

Plaintiffs do not allege with the required particularity any similarity of "treatment, details, scenes, events and characterization" between Plaintiffs' Films and the SPE Defendants' Film, and

their allegations do not come close to the standard required to survive a motion to dismiss. The First, Second, Third and Sixteenth Causes of action against the SPE Defendants should be dismissed.

## B. PLAINTIFFS HAVE NO CLAIM FOR TRADEMARK INFRINGEMENT AGAINST THE SPE DEFENDANTS

Plaintiffs do not and cannot claim that the SPE Defendants used Plaintiffs' alleged mark as a title or in any type of trademark use. Yet they nonetheless claim that some past, often stray, references to the term "12 O'Clock Boys" or even "twelve" gives them a claim for trademark infringement. That unique claim is without merit.

### 1. Standard for Stating Cause of Action for Trademark Infringement.

The Fifth, Sixth and Ninth Causes of Action allege trademark infringement under the Lanham Act or Maryland Code Bus. Reg. § 1-414 et seq.; the Tenth Cause of Action alleges trademark infringement, false advertising and unfair competition under Maryland common law; the Eleventh Cause of Action alleges Contributory Trademark Infringement; and the Twelfth Cause of Action alleges Vicarious Trademark Infringement.

"'A claim of trademark infringement ... is analyzed under [a] familiar two-prong test[.] ... The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether [the] defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004).[5]

---

[5] The Lanham Act standards apply to Plaintiffs' Maryland law claims as well. "It is clear that trademark infringement cases under either the Maryland statute or the Lanham Act are based on the same legal theory and require the same proof." *Mid S. Bldg. Supply of Maryland, Inc. v. Guardian Door & Window, Inc.*, 156 Md. App. 445, 460, (2004); *see also Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 460 (D. Md. 2002), *aff'd*, 91 F. App'x 880 (4th Cir. 2004) ("The test for trademark infringement and unfair competition under state law is the same as the test

Even assuming the validity of Plaintiffs' alleged mark,[6] any trademark claim against the SPE Defendants fails because Plaintiffs have not made any plausible allegation that any action of the SPE Defendants will cause consumers confusion about the origin of the SPE Defendants' Film. "'[T]he crucial issue in an action for trademark infringement ... is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *Id.*

A plaintiff's burden of showing confusion is even greater when the claimed infringement involves an artistic work such as a motion picture: "In *Rogers v. Grimaldi*, the Second Circuit held that the Lanham Act is inapplicable to 'artistic works' as long as the defendant's use of the mark is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source or content of the work." *Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012). This is particularly applicable to titles. *Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993). ("Because of an author's significant First Amendment interest in choosing an appropriate title for his or her work, we have held that literary titles do not violate the Lanham Act 'unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work.'") (*quoting Rogers v. Grimaldi*, 875 F.2d 994, 999 (1989)).

A motion picture such as the SPE Defendants' Film is an "artistic work." *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 177. "The threshold for 'artistic relevance' is purposely low and

---

under the Lanham Act."); *id.* at 466 ("Moreover, the test for common law trademark infringement and unfair competition under Maryland law is the same as that under the Lanham Act."

[6] As shown by the Oscilloscope Defendants in their brief, "12 O'Clock Boyz" is not a valid trademark and "12 O'Clock Boys" does not infringe that mark.

will be satisfied unless the use 'has no artistic relevance to the underlying work whatsoever.'" *Id.* at 178.

Further, it is appropriate for a court to assess the plausibility of confusion at the motion to dismiss stage and dismiss the case if no plausible confusion exists. "In fact, the Second Circuit has suggested that it would be appropriate 'where the court is satisfied that the products or marks are so dissimilar that no question of fact is presented.'" *Id.* at 183 (granting motion to dismiss due to no plausible confusion).

2. **None of the Four Instances Plaintiffs Claim Constitute Trademark Infringement are a Valid Basis for Such a Claim.**

Plaintiffs base all their trademark-infringement-related causes of action on four references on the Internet or social media.[7] However, none of those references could plausibly cause confusion in an appreciable number of consumers, and certainly do not meet the *Rogers* test of being "explicitly misleading."

The first alleged trademark infringement is that in 2018, the SPE Defendants allegedly created a Wikipedia page for the SPE Defendants' Film that stated that the film would be entitled "12 O'Clock Boys." FAC ¶ 149 and Ex. 48 thereto.[8] Plaintiffs do not allege that such Wikipedia page still exists nor can they, nor that the SPE Defendants' Film will be called "12 O'Clock Boys." They simply claim that this old Wikipedia page will cause confusion.

Thus, Plaintiffs want the Court to believe that when the SPE Defendants' Film is released sometime in the future (from, among others, Sony Pictures, Will Smith and Jada Pinkett-Smith), a significant number of purchasers of tickets for the SPE Defendants' Film will remember a

---

[7] Plaintiffs do not and cannot allege that the SPE Defendants' Film is entitled "12 O'Clock Boys" or "12 O'Clock Boyz." They do not and cannot allege that the title of the SPE Defendants' Film will in any manner be similar to their claimed trademark.

[8] The SPE Defendants do not concede that they created the Wikipedia pages or IMDB pages cited by Plaintiffs, but accept the allegations as true for purposes of the Motion to Dismiss only.

11

Wikipedia page back in 2018 that there was once mentioned a possible feature film called "12 O'Clock Boys," will wonder if the SPE Defendants' Film is the same film, and then will wonder based on their memory of the Wikipedia page if the SPE Defendants' Film was made by those who made two short direct-to-video films that were shot sixteen or more years earlier. That anyone, much less an appreciable number of consumers, would make this convoluted chain of supposition, is not plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (a plaintiff must plead "…enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Burch v. Pioneer Credit Recovery*, 551 F.3d 122, 124 (2d Cir. 2008).

Further, it is undoubtedly of artistic relevance that the SPE Defendants' Film is allegedly based, in part, on a documentary called "12 O'Clock Boys." Stating so is not misleading in any manner, and certainly not explicitly misleading as to the origin of the SPE Defendants' Film.

The second alleged basis of the trademark infringement claim that in 2018, the SPE Defendants allegedly created an IMDB page for a film called "Twelve" which, midway through the page, listed "12 O'Clock Boys" as a "working title." FAC ¶ 150 and Ex. 49. Again, when the SPE Defendants' Film is released, an appreciable number of consumers are not going to remember the 2018 IMDB page that used the name "Twelve," nor that it claimed a working title of "12 O'Clock Boys," and memories of that old IMDB entry is not going to make anyone wonder whether the SPE Defendants' Film came from Plaintiffs. And again, a reference of a working title of "12 O'Clock Boys" is not explicitly misleading as to the origin of the SPE Defendants' Film and, in any event, would be fair use and/or protected free speech, not a trademark claim.

The third alleged infringement is that in 2018, the SPE Defendants allegedly "authorized the advertising of their infringing 12 O'Clock Boys Feature Adaptation using Plaintiffs' 12

12

O'Clock Boyz Mark on Twitter and other social media platforms." FAC ¶ 151. Plaintiffs allege this advertising is contained in Exhibit 59 to the FAC, but exhibit 59 consists solely of many Twitter posts by third parties stating that rapper Meek Mill was going to star in a feature film adaptation of 12 O'Clock Boys, and then state that he was no longer with the project. When the SPE Defendants' Film comes out without Meek Mill, no appreciable number of consumers are going to remember tweets about Meek Mill being in a film, wonder if the SPE Defendants' Film was that film, and from that somehow put together a chain of reasoning that that leads them to believe that Plaintiffs are the makers of the SPE Defendants' Film. And nothing in those posts is explicitly misleading.

The fourth claimed infringement is that in January 2019, the Wikipedia entry was changed and the SPE Defendants' Film was then referred to as "Twelve." FAC ¶ 159 and Ex. 51. However, there is no trademark infringement for a Wikipedia entry which referred to a movie by the title "Twelve."  Plaintiffs do not claims to own the rights to the motion picture title "Twelve," nor can they – there have been numerous motion pictures entitled "Twelve," not to mention television series and episodes with that title.  Request for Judicial Notice, Exhibits 1 and 2.  Any claim that this entry will cause people, when the SPE Defendants' Film comes out, to be confused and think Plaintiffs made the SPE Defendants' Film, is fanciful, not plausible. Further, even if the title "Twelve" were used, it is undoubtedly of artistic relevance to a motion picture about bike riders who often ride in the "twelve" position and is no manner explicitly misleading as to the origin of the SPE Defendants' Film.

There simply is no basis for Plaintiffs to bring a trademark infringement claim or related claims against the SPE Defendants, and the Fifth, Sixth, Ninth and Tenth Causes of Action should be dismissed.

13

## C.    CASTING ACTUAL MOTORCYCLE STUNT DRIVERS DOES NOT CONSTITUTE TRADEMARK DILUTION.

As shown in the Oscilloscope Defendants brief and the cases cited therein, the alleged mark "12 O'Clock Boyz" is not the type of famous mark required to state a claim for trademark dilution and Plaintiffs' Seventh Cause of Action should be dismissed on that ground alone.

In addition, Plaintiffs claim that their mark was diluted by the SPE Defendants "by casting random riders from random dirt-bike groups from across the United States as '12 O'Clock Boys' in the infringing 12 O'Clock Boys Feature Adaptation." FAC ¶ 233. That is not a valid basis for a trademark dilution claim.

First, Plaintiffs allege in the FAC that the name of the motorcycle group in the SPE Defendants' Film is "Midnight Clique."  FAC ¶¶ 139, 158, 163. In order to state a claim for dilution, the plaintiff must prove, *inter alia*, "the defendant is making commercial use of the mark in commerce." *Savin Corp.*, 391 F.3d at 449. Casting real dirt-bike riders as members of a group called "Midnight Clique" is not making commercial use of the alleged mark "12 O'Clock Boyz."

Second, in any event casting actual dirt-bike riders in a movie is not using a mark in commerce. Plaintiffs do not have a monopoly on putting actual motorcycle stunt drivers in audio-visual products. Plaintiffs' Seventh Cause of Action should be dismissed.

## D.    PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT IS PREEMPTED BY FEDERAL LAW AND FAILS TO STATE A CLAIM.

The SPE Defendants join in the Oscilloscope Defendants' argument that Plaintiffs' claim of unjust enrichment is preempted by federal law. *See, e.g.*, *Wnet v. Aereo, Inc*., 871 F. Supp. 2d 281, 291–92 (S.D.N.Y. 2012); *Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc*., 565 F. Supp. 2d 505, 509 (S.D.N.Y. 2008). In addition, Plaintiffs' unjust enrichment claim is simply a repetition of their other claims, and because those claims are without merit, the unjust enrichment claim is as well. Also, a claim for unjust enrichment requires a relationship

14

between the plaintiff and defendant, and that the plaintiff undertook activities for the benefit of the defendant, neither of which are alleged here. *Miller v. Walters*, 46 Misc. 3d 417, 425-26, 997 N.Y.S. 2d. 237, 245 (Sup. Ct. N.Y. Cty. 2014).

### E.   THE SPE DEFENDANTS JOIN IN THE MOTION AND BRIEFING FILED BY THE OTHER DEFENDANTS AS APPLICABLE

To avoid duplication, the SPE Defendants join in the motion to dismiss and briefing filed by the other defendants as applicable. If the Court dismisses claims that the 2013 Documentary infringe Plaintiffs' rights, then the claims against the SPE Defendants necessarily fail as well.

### F.   LEAVE TO AMEND SHOULD BE DENIED.

Plaintiffs had months to amend their complaint and were unable to assert any viable claims against the SPE Defendants. Their copyright claims are based on speculation of a few vague similarities that are not protectable, and their trademark claims are based on a few stray Internet references. Plaintiffs cannot avoid dismissal or obtain leave to amend by lumping the defendants together. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal of complaint). The SPE Defendants should not have been named in this lawsuit and are entitled to a dismissal with prejudice. *Azurite Corp. v. Amster & Co.*, 844 F. Supp. 929, 939 (S.D.N.Y. 1994), *aff'd*, 52 F.3d 15 (2d Cir. 1995) (denying leave to amend because amendment would be futile).

### II.   ALTERNATIVELY, PLAINTIFFS' CLAIM THAT A MOTION PICTURE THAT HAS NOT YET BEEN RELEASED WILL BE INFRINGING IS NOT RIPE.

It is not surprising that Plaintiffs do not describe with any specificity any particular part of the SPE Defendants' Film that they claim is infringing, because the SPE Defendants' Film has not yet been completed and released.  Plaintiffs' claims are not ripe and should be dismissed.

"In considering whether a claim is ripe, we consider (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104 (2d Cir. 2014).

15

In *Authors Guild*, the plaintiffs claimed that a project for so-called Orphan Works, which would make available online works still under copyright but no longer available in print, violated the rights of its members, even though the project had been abandoned. The District Court had held that the claim was not ripe: "Were I to enjoin the [creation of the allegedly infringing project], I would do so in the absence of crucial information about what [the allegedly infringing] program will look like should it come to pass and whom it will impact." *Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445, 455 (S.D.N.Y. 2012). In affirming, the Second Circuit stated:

> Even assuming, *arguendo,* that "[a]ny iteration of the OWP under which copyrighted works are made available for public view and download" would infringe *someone's* copyright, *id.,* it does not follow that the OWP will inevitably infringe the copyrights held by the remaining plaintiffs in this case. It is conceivable that, should the University of Michigan ever revive the OWP, the procedures it ultimately implements to identify orphan works would successfully identify and exclude works to which a plaintiff in this suit holds a copyright. Consequently, we cannot say that any of the plaintiffs face a "certainly impending" harm under our ripeness analysis.

755 F.3d at 104.

*Kelly v. Univ. Press of Mississippi*, 2016 WL 4445986, at *4 (C.D. Cal. Aug. 16, 2016), found that plaintiff's claim of infringement based on defendant's alleged use of copyrighted interviews in a "forthcoming" book was not ripe because (1) defendant was in the "process of researching and selecting interviews for the Future Book, however, and ha[d] not made any final decisions yet on what interviews to include in the Future Book" (2) "[a]nd even more critically, the Court lacks sufficient facts to determine which Interviews will be included in the Allegedly Infringing Book, or what form they may take." Because "any judgment of infringement necessarily rests on 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" plaintiff's claim was not ripe. *See also Center for Discovery, supra,* 2018 WL 1583971, *16.

16

Like *Author's Guild* and *Kelly*, Plaintiffs are suing on a work that has not been finalized, that may not use anything from the 2013 Documentary or if it does, may use elements that have nothing to do with Plaintiffs' Films or even if they do, may be fair use or otherwise not infringing. Indeed, for the Court to fully analyze Plaintiffs' claims it would have to compare Plaintiffs' Films and the SPE Defendants' Film to see if there is substantial similarity between the two, which at this point is impossible since there is no released SPE Defendants' Film to compare to Plaintiffs' films.

As for the second prong of ripeness, hardship, "[s]uffice it to say that '[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship.'" *Authors Guild*, 755 F.3d at 105. Plaintiffs cannot allege any present harm to them from a movie that has not yet been completed or released.

## III.   ADDITIONALLY, THE COURT LACKS PERSONAL JURISDICTION OVER THE OVERBROOK DEFENDANTS AND WILL SMITH.

Plaintiffs acknowledge that none of the Overbrook Defendants nor Smith is domiciled in New York, but allege that they all conduct business in New York. FAC ¶¶ 27-29. Plaintiffs' *sole* jurisdictional allegations as to "general and/or specific personal jurisdiction" over the Overbrook Defendants and Smith is that (i) "they purposefully availed themselves of the privilege of conducting business in New York" by "market[ing] and promot[ing]" the SPE Defendants' Film which contained Plaintiffs' purportedly protected 12 O'clock Boyz Mark on an IMDB internet webpage and (ii) engaged in "other [marketing and/or promoting] means" directed at New York consumers. *Id.* at ¶ 17. Notably, Plaintiffs (a) have not alleged that their claims arise out of any business that the Overbrook Defendants or Smith conducted in New York, and (b) have not alleged that they themselves are domiciled in or were doing business in New York. *Id.* at ¶¶ 18, 19, 45.

17

A.    **RELEVANT FACTUAL BACKGROUND**

1.    **Smith**

Smith has resided primarily in California since 1988.  (Declaration of Will Smith ("Smith Decl.") ¶ 2.) Smith has a California driver's license, is registered to vote in Los Angeles County, pays income taxes in California, and owns real property in California. (*Id.* at ¶ 3.) By contrast, Smith is not a resident of New York, does not have a New York driver's license and is not registered to vote in New York. (*Id.* at ¶ 4.) Most significantly, Smith does not own or lease property in New York and does not work or conduct business continuously in New York. (*Id.* at ¶ 4.) Although Smith has occasionally traveled to New York, the last time he worked on a film in New York was in or around 2016 when he acted in a film shot there (though he lived in New Jersey during filming).  (*Id.* at ¶ 5.) The last time he was in New York was in early October 2019 to film an appearance on *The Late Show with Stephen Colbert*, regarding his upcoming film, *Gemini Man*. (*Id.*)

Smith has never met or spoken to Plaintiffs. (*Id.* at ¶ 6.) Other than in connection with this litigation, no one representing Smith or the Overbrook Defendants has communicated with Plaintiffs or any agent acting on their behalves. (*Id.*) Smith is not a party to any agreements with Plaintiffs. (*Id.*) Though Smith is working with Sony Pictures Entertainment on the SPE Defendants' Film, it has not yet been completed or released. (*Id.* at ¶ 7; Declaration of Overbrook Entertainment LLC ("Overbrook LLC Decl."), ¶ 5; Declaration of Overbrook Entertainment Inc. ("Overbrook Inc. Decl."), ¶ 5.) The SPE Defendants' Film is being, developed, produced and edited in Los Angeles County, California and was not filmed in New York. (Smith Decl. ¶ 7.) Last, Smith has not traveled to New York in connection with the SPE Defendants' Film.  (*Id.*)

18

2.      **Overbrook Defendants**

The Overbrook Defendants are California-based motion picture production companies, with their sole offices located in West Hollywood, California. (Overbrook Inc. Decl. ¶ 2; Overbrook LLC Decl. ¶ 2.) The Overbrook Defendants, combined, have only approximately five regular employees, all of whom work in Los Angeles County in their West Hollywood office. (Overbrook Inc. Decl. ¶ 2; Overbrook LLC Decl. ¶ 2.) The Overbrook Defendants have been located within and have been operating in Los Angeles County continuously since each entity was registered in California in 1998 (Overbrook Entertainment Inc.) and 2003 (Overbrook Entertainment LLC). (Overbrook Inc. Decl. ¶ 2; Overbrook LLC Decl. ¶ 2.)

The Overbrook Defendants do not conduct continuous or substantial business in New York. Specifically:

- They do not have an office, mailing address or telephone number in New York.
- They do not have any managers or directors in New York.
- They do not have any employees in New York.
- They do not own any real estate in New York.
- They do not own or lease any real property in New York.
- They did not enter into any contracts with Plaintiffs in New York or anywhere else.
- They have no bank accounts in New York.
- They do not have a registered agent for service of process in New York.
- They are not registered with the Secretary of State of New York to transact business in New York.
- They have never invoked the jurisdiction of any court in New York or any regulatory or administrative agency in New York.
- They do not do regular pre- or post-production work in New York.
- They do not have regular filming locations in New York.
- They do not direct advertising to New York.

(Overbrook Inc. Decl. ¶ 3; Overbrook LLC Decl. ¶ 3.)

Overbrook Entertainment LLC has not been involved in any film projects in New York. (Overbrook LLC Decl. ¶ 4.) Within the last five years, Overbrook Entertainment, Inc. has been involved in only one film in New York, in 2014. (Overbrook Inc. Decl. ¶ 4.)

## B.     APPLICABLE LAW

On a motion to dismiss, a plaintiff bears the burden of establishing that the court has jurisdiction over each defendant and that defendants have sufficient minimum contacts with the forum state such that each "defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum … thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "[C]onclusory non-fact-specific jurisdictional allegations," such as those asserted by Plaintiffs here, "will not establish personal jurisdiction." *King Cnty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 316 n. 28 (S.D.N.Y. 2011); *see also Trisvan v. Heyman, et al.*, 16-CV-84 (MKB), Dkt. No. 23 at *7 (E.D.N.Y. 2017).[9]   The Court should dismiss the Complaint unless the "assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### 1.     **General Personal Jurisdiction**

Courts distinguish between "general" and "specific" personal jurisdiction in assessing whether a defendant has requisite "minimum contacts" with the forum state. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). In New York, general jurisdiction may be established only if (1) the defendant is domiciled, incorporated in or has its principal place of business in the forum state or (2) in exceptional cases, the defendant's contacts with a forum are so extensive as to support general jurisdiction notwithstanding domicile elsewhere. *Daimler*

---

[9] In *Trisvan*, the court granted defendant's motion to dismiss and holding that pro se plaintiff's allegations that the court had jurisdiction over certain defendants because they "conduct[ed] business within … the State of New York" was insufficient "because Plaintiff fail[ed] to set forth any allegations showing that the [relevant] Defendants had any contacts with New York." *Trisvan*, *supra*, at *7.

*AG v Bauman*, 571 U.S. 117, 137-38 (2014); *Reich v Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *Magdalena v Lins*, 123 A.D.3d 600, 601 (N.Y. App. Div. 2014).

The U.S. Supreme Court has substantially narrowed the grounds by which an entity may be subject to general jurisdiction. In *Daimler*, the Court held that general jurisdiction could no longer be exercised "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." 571 U.S. at 138; *Norex Petroleum Ltd. v. Blavatnik*, 22 N.Y.S.3d 138 (N.Y. Sup.) (*Daimler* "brought an end to 'doing business' jurisdiction [under CPLR section 301]"). Rather, *Daimler* premised invocation of general jurisdiction on a corporation's in-state place of incorporation and principal place of business, in all but exceptional cases. 571 U.S. at 139, n. 19.

The traditional indicia of permanent and continuous ties include: "(1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the existence of bank accounts or other property in New York; and (4) the presence of employees in New York." *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 268 (S.D.N.Y. 2000).[10] Further, "defendant's solicitation of business alone cannot justify a finding of presence in New York pursuant to section 301, unless the . . . defendant engages in other activities of substance in the state." *Wickers*, 411 F. Supp. 2d at 207; *M. Shanken*, 2010 WL 4159476 at \*6 (dismissing trademark claims on personal jurisdiction grounds, as "mere solicitation of business within the state does not constitute the transaction of business within the state").

Receiving production credit for the airing of an allegedly infringing video, even if it is broadcast nationwide, is not sufficient to demonstrate continuous and systematic ties to New York.

---

[10] *See also Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 206-07 (E.D.N.Y. 2006); *Burrows Paper Corp. v. R.G. Eng'g, Inc.*, 363 F. Supp. 2d 379, 386 (N.D.N.Y. 2005) (Virginia company was not subject to general jurisdiction in New York where it did not maintain offices, bank accounts, or any other property in New York, and did not maintain a presence in New York through its employees and agents).

*See Carell v. Shubert Organization, Inc.*, 104 F. Supp. 2d 236, 268 (S.D.N.Y 2000) (granting motion to dismiss as to certain defendants, who along with others, produced and licensed the Broadway musical *Cats* (which subsequently aired on PBS), because the allegations did not meet the criteria for general jurisdiction under New York's long arm statute given that they did not have a physical presence in New York and were not alleged to have conducted business in New York with any regularity).

## 2.   **Specific Personal Jurisdiction[11]**

In assessing whether a non-domiciliary like the Overbrook Defendants and Smith are subject to specific jurisdiction in New York, a court must first determine whether the long-arm statute confers jurisdiction, and then determine whether the exercise of jurisdiction comports with due process. *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.,* No. 18-CV-2897 (JPO), 2018 WL 2022626, at *3 (S.D.N.Y. Apr. 30, 2018). In relevant part, New York's long-arm statute provides that a court may exercise personal jurisdiction for claims arising from: (1) business that a defendant "transacts . . . within the state" or (2) "a tortious act" committed "within the state." CPLR 302(a)(1)-(2). Exercise of long-arm jurisdiction requires an "articulable nexus" or "substantial relationship" between a New York transaction and the legal claim asserted. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012) (internal citations omitted); *see also Marie v. Altshuler*, 817 N.Y.S.2d 261 (2006) ("situs of the injury for long-arm [jurisdiction] purposes is where the event giving rise to the injury occurred, not where the resultant damages occurred").

Conduct on the Internet that happens to reach the forum state, alone, does not constitute "transacting business" within the forum state. *See, e.g.*, *Best Van Lines v. Walker*, 490 F.3d 239

---

[11] Though Plaintiffs have not alleged that their claims arise out of business that the SPE Defendants conducted in New York, this Motion will still address any possible argument in favor of specific personal jurisdiction.

(2d Cir. 2007) (affirming dismissal of defamation claim against Iowa-based Internet speaker under CPLR 302(a)(1) for lack of personal jurisdiction).[12] Further, the Second Circuit has previously held that CPLR 302(a)(2) (tortious conduct in the forum state) applies only when a defendant is physically present within the forum state. In *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997), the Second Circuit refused to find long-arm jurisdiction under CPLR 302(a)(2) and dismissed a trademark infringement action against a Missouri business.[13]

## C.     ARGUMENT

### 1.     The Court Lacks General Personal Jurisdiction Over The Overbook Defendants and Smith.

The Overbrook Defendants and Smith are not subject to general jurisdiction in New York. Smith has been a resident of California since 1988, does not own or lease property in New York, and does not regularly work in New York. The Overbrook Defendants' principal place of business is in California, and they have only one office, also located in California. Overbrook Entertainment, LLC has never produced any films in New York. Overbrook Entertainment, Inc. was involved in a few films that were shot in New York several years ago, but neither company solicits business in New York or maintains property or bank accounts in New York.

Plaintiffs clearly allege that the Overbrook Defendants and Smith's only purported wrongful conduct is filming and producing a movie that was all done *outside of New York.* It is evident that there is no conceivable basis for personal jurisdiction, and whatever limited contact

---

[12] *See also Bowman v. Winder*, No. 14 CIV. 3428 AT, 2015 WL 1639255, at *2 (S.D.N.Y. Mar. 25, 2015) (dismissing copyright infringement claim for lack of personal jurisdiction absent evidence that alleged infringer "explicitly targeted New York in any way").

[13] The Court wrote, in language directly applicable here:

"The acts giving rise to Bensusan's lawsuit—including the authorization and creation of King's web site, the use of the words 'Blue Note' and the Blue Note logo on the site, and the creation of a hyperlink to Bensusan's web site—were performed by persons physically present in Missouri and not in New York. Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2))." *Id.* at 29.

23

the Overbrook Defendants and Smith have had with New York, it hardly qualifies as the "exceptional case" that would warrant the exercise of general jurisdiction on a non-domiciliary party. *See Daimler*, 571 U.S. at 139, n. 19.

2. **The Court Lacks Specific Jurisdiction Over The Overbrook Defendants and Smith.**

The Overbrook Defendants and Smith are likewise not subject to specific jurisdiction under CPLR 302 (New York's long-arm statute) because the relevant events allegedly involving them occurred outside of New York. The SPE Defendants' Film is being developed, produced and edited in Los Angeles and was not filmed in New York. Neither Smith nor any employees of the Overbrook Defendants have traveled to New York in connection with the SPE Defendants' Film.

Regarding any purported Internet activity, even if the Overbrook Defendants and Smith did in fact engage in online marketing of the SPE Defendants' Film, that is not sufficient to establish that they aimed such marketing directly at New York consumers or transacted business in New York.  *See Best Van Lines*, 490 F.3d at 239; *Carell*, 104 F. Supp. 2d at 245, 268, 270.

Finally, the Overbrook Defendants and Smith never entered into any agreements with Plaintiffs and never met with or spoke to Plaintiffs or their agents either in New York or elsewhere. Moreover, Plaintiffs are not New York residents either. Therefore, there is no "articulable nexus" or "substantial relationship" between Plaintiffs' conclusory allegations and the legal claims asserted against the Overbrook Defendants and Smith. *See Licci*, 20 N.Y.3d at 339.

3. **Exercise of Personal Jurisdiction Over the Overbrook Defendants and Smith Would Violate Due Process and Does Not Comport With Traditional Understandings of Fair Play and Substantial Justice.**

As interpreted by the New York state courts, New York's long-arm statutes (CPLR 301 and 302) are more restrictive than due process under the United States Constitution. *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 459-60 (1965). But even if

Plaintiffs could meet the applicable standards for long-arm jurisdiction, which they have not even attempted to do, the exercise of personal jurisdiction here would violate constitutional due process, which requires "defendant[s'] suit-related conduct" to "create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). It is a defendant's actions – not a plaintiff's domicile – that creates necessary contacts to establish jurisdiction. "Mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 278. And here, Plaintiffs are not even domiciled in New York. Given that the Overbrook Defendants and Smith are small California-based businesses and an individual that do not transact business in New York and have never met Plaintiffs (who are not even from New York), subjecting them to jurisdiction in New York would be unreasonable and in violation of the Due Process Clause.

## CONCLUSION

For the above reasons, the SPE Defendants respectfully request that the Court grant this Motion to Dismiss Plaintiffs' First Amended Complaint, and in addition that it grant the motion of the Overbrook Defendants and Smith to dismiss for lack of personal jurisdiction.

Respectfully submitted,

Dated: Los Angeles, California
October 21, 2019

By: ___/s/ Joel R. Weiner_____
Joel R. Weiner (*pro hac vice)*
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Phone:  310.788.4522
Email:  joel.weiner@katten.com
*Attorney for Sony Pictures Entertainment Inc.,*
*Overbrook Entertainment, Inc.,*
*Overbrook Entertainment, LLC, and Will Smith*

Joel W. Sternman
575 Madison Ave
New York, NY 10022
Phone: 212.940.8800
Email: jsternman@katten.com
*Attorneys for Sony Pictures Entertainment Inc.,*
*Overbrook Entertainment, Inc.,*
*Overbrook Entertainment, LLC, and Will Smith*